680 P.2d 603

**Robert L. NORTH, Plaintiff-Appellee,**

v.

**PUBLIC SERVICE COMPANY OF NEW MEXICO, Defendant-Appellant.**

**No. 5957.**

Court of Appeals of New Mexico.

Oct. 18, 1983.

Certiorari Quashed March 15, 1984.

Paul S. Wainwright, Gregory V. Pelton, Robinson, Stevens & Wainwright, P.A., Albuquerque, for plaintiff-appellee.

Robert H. Clark, Thomas F. Keleher, Margaret E. Davidson, Keleher & McLeod, P.A., Albuquerque, for defendant-appellant.

## OPINION

BIVINS, Judge.

Plaintiff sued Public Service Company of New Mexico (PNM) in trespass and negligence seeking compensatory and punitive damages resulting from the utility company's activities in laying out and constructing a power line over a portion of plaintiff's property. PNM filed an eminent domain action against plaintiff seeking to condemn the area where the line was erected. Both actions were filed the same day and were later consolidated for trial.

The trial court submitted to a jury the issues of trespass and PNM's right to condemn. The jury found against PNM on both issues and awarded plaintiff $225,000 compensatory damages and $222,900 punitive damages. On PNM's motion for judgment notwithstanding the verdict or for a new trial, the trial court ordered a new trial on all damage issues unless plaintiff accepted a remittitur of $199,000 on the compensatory damage award, the court finding that award excessive because the jury failed to understand or follow the instructions. The trial court, however, did not disturb the punitive damage award since no passion or prejudice had been shown. Plaintiff accepted the remittitur. Both parties appeal raising numerous issues. Because of our disposition, we discuss exclusivity of eminent domain and related issues raised on appeal which may affect a retrial on the merits.

Under the facts and circumstances of this case did plaintiff have a cause of action for trespass, or was he relegated to damages under eminent domain? We hold as a matter of law that plaintiff's sole recourse was under eminent domain as to the taking and any damages suffered in connection with the normal installation of PNM's utility line. We remand, however, for further proceedings to determine if PNM abused its discretion or acted in bad faith in causing *excessive* damage to plaintiff's property.

Although we will discuss in more detail prior appeals involving this case, we note at the outset that this case has been before us on two previous occasions. *See North v. Public. Serv. Co., etc.*, 94 N.M. 246, 608 P.2d 1128 (Ct.App.1980) (*North I*), and *North v. Public Service Co. of New Mexico*, 97 N.M. 406, 640 P.2d 512 (Ct.App.1982) (*North II*).

In August of 1977, plaintiff purchased Lot 24 in the Forest Meadow Ranch subdivision. This 10-plus acre lot is located in a heavily wooded area of the Manzano mountains east of Albuquerque, and it offers scenic beauty and privacy. A not-to-scale sketch will be helpful to an understanding of the events that occurred.

Approximately two months after plaintiff purchased his lot, PNM received a request from Dr. Davidson, owner of Lot 25, for electric service. PNM's staker, Harold Franklin, went to the property to determine how best to locate the line. He set stakes along the eastern edge of plaintiff's property. When plaintiff noticed these stakes he contacted Franklin, calling his attention to an existing utility easement located on the Valle Robles Estates immediately adjacent to and east of plaintiff's lot. Plaintiff also informed Franklin that he had acquired a 20-foot access easement from Dr. Davidson and that the proposed staked route would put a pole in the middle of this easement. Franklin agreed to relocate the stakes so that the power line would not be constructed on plaintiff's property and so instructed the line crew. He also told the crew not to go on plaintiff's property.

Because he left for vacation, Franklin did not personally supervise the relocation of the stakes, and disregarding the instruc-

tions, the line crew erected the poles inside plaintiff's property line on the eastern edge. In doing so they removed some trees and damaged others along the eastern and northern boundaries. In gaining access they also caused damage to vegetation and earth while utilizing an old logging road which diagonally crossed plaintiff's property. Before the line crew performed its work, PNM had engaged an independent contractor to go out and trim branches along a path for the line in a location which plaintiff apparently found satisfactory. The line crew did not follow the route as trimmed.

Negotiations toward a settlement ensued, and at the suggestion of PNM's claims adjuster, plaintiff obtained two estimates to restore the property to its former condition, one in the amount of $19,400 and the other, $51,353.55. PNM felt these estimates were excessive, particularly since plaintiff had paid $22,900 for the entire lot. PNM offered to relocate the poles, pay

$3,000 for damages and have a professional landscaper groom the area and restore the grass and shrubs. Plaintiff declined and directed PNM not to go on his property, even to remove its poles, until a settlement had been made. With this impasse the parties filed their respective lawsuits.

### Power of Eminent Domain

■ A property owner is entitled to just compensation when his property is taken or damaged for public use. N.M. Const. art. II, § 20. The eminent domain statute provides the means for the ascertainment and payment of those damages. *See* NMSA 1978, § 42–1–1 *et seq.* (repealed effective July 1, 1981 and replaced by NMSA 1978, § 42A–1–1 *et seq.*) (Orig.Pamp. and Repl.Pamp.1981). If the condemning authority has taken or damaged property for public use without making just compensation therefor or without initiating proceedings to do so, the property owner has recourse through inverse condemnation proceedings. Section 42–1–23 (now § 42A–1–29).

■ As long as the property has been taken or damaged for *public use,* inverse condemnation provides the exclusive remedy for the property owner if the condemnor takes or damages property without paying just compensation or without initiating proceedings to condemn. *Zobel v. Public Service Company,* 75 N.M. 22, 399 P.2d 922 (1965); *Garver v. Public Service Company of New Mexico,* 77 N.M. 262, 421 P.2d 788 (1966). Although a condemnor for a public use may enter private property before initiating condemnation proceedings, this practice is not favored. Both *Zobel* and *Garver,* like the case before us, involved trespass actions brought by the property owner to recover for damages. In both cases the Supreme Court affirmed dismissal of the common law trespass action, holding that the property owner was relegated to the eminent domain statutes for recovery of damages. In those cases the condemning entities acted within the eminent domain power granted to them by the legislature.

Plaintiff does not quarrel with the exclusivity of the eminent domain statute, but argues that it has no application to the facts of this case. In essence plaintiff challenges PNM's authority to condemn. In *Kaiser Steel Corporation v. W.S. Ranch Company,* 81 N.M. 414, 467 P.2d 986 (1970), the Supreme Court held that plaintiff had a right to condemn a right-of-way over private property to lay pipeline to transport water for use in a coal mine and that the property owner's remedy lay in inverse condemnation rather than trespass. The crucial issue was whether use of water for an industrial purpose constituted a public use such that a right-of-way could be condemned. The court held it did; however, it observed that had plaintiff "miscalculated and it was determined that they were mistaken in their belief that they had the right to condemn, the trespass action undertaken by Ranch would have been proper, and substantial damages would have been adjudged against Kaiser as a trespasser." *Id.* at 422, 467 P.2d 986.

Plaintiff does not challenge the fact that PNM wanted the easements for a public use, so unlike *Kaiser,* we are not concerned with a dispute over "public use". What plaintiff challenges is the necessity of taking his property. He claims that there were other available utility easements that PNM could have used and that PNM could have routed its line so as to avoid plaintiff's property. Plaintiff relies on *City of Carlsbad v. Ballard,* 71 N.M. 397, 378 P.2d 814 (1963), for the proposition that "a condemnor may take no greater interest than is reasonably necessary for the contemplated public use." *Accord, Hobbs Municipal Sch. Dist., etc. v. Knowles Dev. Co.,* 94 N.M. 3, 606 P.2d 541 (1980).

Applying the above rule to this case, plaintiff says PNM had no right to condemn, because it did not require an easement from his property. Plaintiff refers to the existing seven foot easement on the adjacent property to the east. He also refers to the evidence that after setting the stakes on plaintiff's property, Mr. Franklin notified the Right-of-Way Department of PNM so that it would acquire an easement

from plaintiff. When plaintiff called the existing easement to the attention of Mr. Franklin, he agreed to remove the stakes; he later indicated that PNM could "live with" the existing easement. As to the northern boundary, plaintiff says that since Dr. Davidson requested electrical service, PNM could have taken a ten foot easement from him instead of taking five feet from Dr. Davidson and five feet from plaintiff. Plaintiff argues, "A suit to condemn property that PNM had agreed was not necessary would easily support a finding that PNM acted in bad faith in instituting the condemnation proceeding against Robert North."

A similar argument was made in *State Highway Com'n v. Ruidoso Telephone Co.*, 73 N.M. 487, 389 P.2d 606 (1963), which our Supreme Court answered as follows:

As to the necessity or need for the use of the private lands for its facilities, the Commission seems to argue that since the Company had permission to use the highway right of way it therefore had no necessity or need to place its facilities on the private lands. It cannot be argued that the facilities in question were not actually used by the Company for its corporate purposes and for a public use. The particular location of the right of way which a public utility company seeks to condemn for the exercise of its corporate function is a matter within the discretion and judgment of the company and is a part of the sovereign right of eminent domain which is granted to it by the legislature. The exercise of this judgment and discretion cannot be inquired into by the courts in the absence of fraud, bad faith, or gross abuse of discretion.

*Id.* at 499, 389 P.2d 606.

Plaintiff has failed to produce sufficient evidence to prove fraud, bad faith or gross abuse of discretion with respect to location. We are not concerned here with a fact question as to which reasonable minds might differ; we are concerned with the court's right in the first instance to inter-

fere with a legislative grant of eminent domain. In *State Ex Rel. State Highway Commission v. Burks*, 79 N.M. 373, 443 P.2d 866 (1968), the Supreme Court stated the rule as follows:

It appears that the overwhelming weight of authority makes clear that the question of the necessity or expediency of a taking in eminent domain lies with the legislature and is not a proper subject for judicial review. 1 Nichols, Eminent Domain § 4.11, and cases therein cited.

*People v. Lagiss*, Cal.App., 30 Cal. Rptr. 852, said the following about the right of courts to determine the necessity for taking:

"[T]he motives or reasons for declaring that it is necessary to take land are no concern of the owner of land sought to be condemned by the state for a use declared by law to be a public use. * * At best it [the evidence] establishes that plaintiff was taking more land than needed for a public purpose. Such necessity is not justiciable, even if the motive of plaintiff was to take more land than it needed in order to avoid severance damages."

It is equally well settled that there is no limitation on the right of the legislature to designate the agencies that shall exercise the power of eminent domain except as restricted by the constitution. 1 Nichols, Eminent Domain § 3.22.

*Id.* at 375, 443 P.2d 866. *See also State v. District Court of Fourth Judicial Dist.*, 39 N.M. 523, 51 P.2d 239 (1935).

██ It is well settled that the power of eminent domain may be delegated by the legislature to a private corporation, such as a utility which serves the public. 1, Nichols on Eminent Domain, § 3.21[2]; NMSA 1978, § 62-1-4. In the absence of any statutory provision submitting the matter to a court or jury, the determination of necessity, expediency, or propriety lies in the grantee of the power. *2,953.15 Acres of Land, etc. v. United States*, 350 F.2d 356 (5th Cir.1965); *City of Chicago v. Albert J. Schorsch Realty Co.*, 95 Ill.App.2d

264, 238 N.E.2d 426 (1968). New Mexico has no statute which requires the submission of the question to a court or jury. Thus, a grant of authority by the legislature to exercise the power of eminent domain carries with it the right of the grantee of that power to decide the question of necessity as well as questions of expediency and propriety. *City of Chicago v. Vaccarro,* 408 Ill. 587, 97 N.E.2d 766 (1951). The decision of the grantee of the power of eminent domain as to the necessity, expediency, or propriety of exercising that power is political, legislative or administrative, and its determination is conclusive and not subject to judicial review, absent fraud, bad faith, or clear abuse of discretion. *Colorado State Bd. of Land Com'rs v. District Court,* 163 Colo. 338, 430 P.2d 617 (1967); *State Highway Com'n. v. Ruidoso Telephone Co.* The determination of the question of necessity may not be easily or casually overthrown by the courts, but strong and convincing evidence of the most conclusive character is required to upset the determination. *See Branch v. Oconto County,* 13 Wis.2d 595, 109 N.W.2d 105 (1961); *Brest v. Jacksonville Expressway Authority,* 194 So.2d 658 (Fla.App.), *aff'd, Jacksonville Expressway Authority v. Brest,* 202 So.2d 748 (Fla. 1967).

 There has been no claim of fraud, only a claim that PNM acted in bad faith and abused its discretion. The evidence reflects that in maintenance areas PNM customarily acquired easements of at least ten feet in width, and in the Valle Robles Estates subdivision all interior easements were fourteen feet wide. The stakes set on plaintiff's property were selected on the basis of cost, aesthetics and possible environmental damage. The fact that PNM could have "lived with" seven feet instead of fourteen does not demonstrate abuse of discretion. The grantee of the power to condemn has large discretion in the amount of land to be taken. *City of Chicago v. Vaccarro.* It also has a right to anticipate

future needs. 2A *Nichols on Eminent Domain,* § 7.223[2]; *City of Chicago v. Vaccarro.* The evidence reflects that the single-wire poles installed would be replaced with multi-wire poles which require wider rights-of-way. New Mexico's Constitution does not require that a taking be limited only to present public necessity. *See Hobbs Sch. Dist. v. Knowles* (property condemned for school to be constructed within five to ten years). No abuse of discretion has been shown by taking a seven foot easement on the east boundary and a five foot easement on the northern boundary of plaintiff's property or in taking equal amounts from adjoining landowners. Nor do we find evidence of abuse of discretion in not re-routing the line so as to avoid plaintiff's property. Plaintiff offered expert testimony that this could be done. It would have required a longer line and more construction. PNM chose the shorter and most direct route. *See City of Pipestone v. Halbersma,* 294 N.W.2d 271 (Minn. 1980); *Branch v. Oconto County.*

The fact that PNM initially agreed to "live with" the adjoining easement but later filed to condemn does not establish bad faith. When plaintiff voiced his objection to the line, Mr. Franklin agreed to move it. This accommodation, for whatever reason, would not preclude PNM from condemning then or later in order to acquire full fourteen foot and ten foot easements.[1] PNM filed after it was unable to settle with plaintiff. PNM had the right to condemn. It cannot be held liable for bad faith in exercising a lawful right granted by the legislature.

The proof does not rise to the level that would allow the courts to interfere with the legislative grant of power to condemn. *City of Carlsbad v. Ballard* and *Hobbs Municipal Sch. Dist. v. Knowles* do not conflict with our holding. In both of those cases the condemnor admitted that it sought to condemn more property than necessary, and the reason in both cases was the same. The property was being pur-

---

1. Under NMSA 1978, § 62–1–4 (currently NMSA 1978, § 62–1–4 (Cum.Supp.1983)) PNM had the right to condemn a strip not to exceed one hundred feet.

chased under a contract from the State, and a patent would not issue for less than the entire tract. If the condemnee defaulted then the State could forfeit the entire contract, including the part needed. In order to avoid that risk, the condemnor sought to condemn the entire tract. This, the Supreme Court held, it could not do.

Plaintiff argues that *North I* and *North II* became the law of the case and, therefore, any consideration as to the propriety of trespass as a viable cause of action is precluded. Plaintiff is wrong. We held in *North I* that plaintiff's complaint stated a claim for relief in trespass; however, this Court refused to consider what effect the condemnation proceeding had on that complaint. PNM's condemnation action was not before this Court in *North I* and the majority did not consider the exclusivity question in that appeal. *North I* could have addressed the issue because the motion to dismiss raised the question of whether relief could be granted outside the provisions of the inverse condemnation statute. Thus, the issue squarely before us now was not decided in *North I.* Nor does *North II* deal directly with the issue. The second appeal covers the issue of punitive damages, and in doing so, assumes trespass lies.

Our consideration extends beyond the erection of a simple residential utility line. Those responsible for the planning, funding and construction of highways, airports, schools and other public works must be able to carry out their responsibilities without the costly delays and perhaps conflicting decisions that could result from judicial interference. Conceivably one property owner could tie up a project for years by challenging the legislative grant of authority to the detriment of the greater public good. Courts should only interfere in the most extreme cases. The taking of fourteen-foot and ten-foot easements along common property lines with adjoining owners contributing an equal amount and all potentially benefiting from the service does not rise to the level where judicial interference is justified.

Therefore, we hold that plaintiff's sole remedy as to the taking of the seven and five foot easements lies in the condemnation proceeding initiated by PNM. Also to be resolved in the condemnation proceeding are any damages reasonably caused in gaining access.

**Excessive Damage**

■ Our conclusion that PNM had the right to condemn the easements on plaintiff's property does not answer the question whether the *manner* in which PNM installed its line exceeded its authority. There are at least two ways in which a condemning authority may be liable to a property owner in trespass. One is where the condemnor takes more land than is reasonably necessary. That type of trespass is not available under the facts here. Another way is where the condemnor, although not taking more land than necessary, causes excessive damage by the manner in which the taking occurs. This basis for a trespass action would apply only where less than the fee simple is condemned.

Plaintiff offered proof that PNM's employees cleared trees and shrubs far in excess of what was necessary, and caused unnecessary damage when they utilized an abandoned logging road that runs diagonally across plaintiff's property.

■ Under Section 62–1–4 the legislature has delegated the power to utilities to appropriate by condemnation so much of the lands "as may be necessary for their purpose" and also grants the right of access to such lands in order to construct and lay lines, etc. The narrow question then is whether this enabling legislation permits excessive damage, particularly where, as here, there is evidence that the work done did not conform to standard practice in the mountainous areas, and was characterized by Mr. Franklin as "malicious." [2] Apply-

**2.** We cannot tell from the testimony of Mr. Franklin, if he was characterizing the manner in which the work was done or the fact that the line crew had not followed his instructions, or

ing the same principles discussed previously, we hold that a condemnor may not with impunity cause damage which arises from fraud, bad faith or gross abuse of discretion. The legislature could not have intended to authorize willful damage, and when it occurs the courts will not hesitate to step in and allow relief. *See Indiana & Michigan Elec. Co. v. Stevenson,* 173 Ind. App. 329, 363 N.E.2d 1254 (1977).

■ As pointed out in *Stevenson,* there are competing interests which must be considered in determining if the damages are excessive: the interest of the landowner to be secure in the ownership and possession of his property on the one hand, and the interest, on the other hand, of society as a whole in the benefits of the public purpose—here making electricity available to all. Thus, while a cause of action in trespass may lie for excessive damage caused by fraud, bad faith or gross abuse of discretion, it clearly does not lie for that portion of the taking which is necessary for a public purpose nor for reasonable damages caused in gaining access.

■ As in cases involving geographical location of a condemned right-of-way, like *State Highway Com'n v. Ruidoso Telephone Co.,* the courts will not interfere absent clear and convincing evidence of the most conclusive nature that the condemning authority caused excessive damage through fraud, bad faith or gross abuse of discretion. The burden of proof rests with the property owner.[3]

■ The determination is a two-step process. The trial court should first make the threshold determination as to whether a justiciable issue exists. If the court determines that one does exist, the property owner may then proceed with his action in trespass, but only as to that portion of the

damage over and above what results from the taking itself. For damages arising from the taking plaintiff shall receive compensation in the eminent domain proceeding.

We therefore remand with directions to proceed in the condemnation action as to those damages caused by the taking, including incidental damages and damages caused in gaining access. The trial court shall determine if judicial interference is warranted with respect to any excessive damage, and may, if it wishes, take additional evidence in light of this opinion. If the court determines a justiciable issue exists, plaintiff may proceed in trespass as to those damages. Of course, those damages would be additional to the damages assessed in the condemnation proceedings.

■ By the very nature of the proof required to establish a justiciable issue, punitive damages will ordinarily lie. *North II* held that there were issues of fact which could support a jury's award of punitive damages. We hold under the record herein that plaintiff may pursue his claim for punitive damages if the trial court determines that plaintiff's trespass claim lies.

■ Plaintiff did not sue the members of the line crew, only PNM. In *North II* we held that a fact question existed as to whether the filing by PNM of its petition to condemn the easements constituted a ratification of its employees' acts. We said that a "jury could find that PNM's actions regarding the 'forced' easement, although facially legal, were not necessary; and that by signing the petition to institute an inverse condemnation[4] suit, officials of PNM ratified the conduct complained of." In the posture of the lawsuit at that time, *North II* necessarily assumed a jury question as

---

both. If he referred only to the fact that the crew had disregarded his order and installed the lines on plaintiff's property, his characterization would not be relevant in view of our holding. To the extent, however, he may have been referring to the manner in which the work was done, it is relevant.

3. In the trial of this case, the court placed the burden of establishing the right to condemn on PNM. This is incorrect. The burden of proof rests with the party challenging the authority, not the party attempting to exercise it.

4. "Inverse condemnation" applies to the property owner, not the condemnor. *See* Section 42–1–23. *North II* should read "condemnation".

to PNM's right to condemn. Our review here, based on all the evidence, reveals no justiciable issue, and we conclude that PNM had the right to condemn. Since ratification was based on the filing, there was no ratification. Further, the filing of the petition to condemn cannot be construed as a ratification, participation or authorization with respect to any excessive damages caused by PNM's employees, because the condemnation proceedings could have no effect on a claim for those damages. It follows that plaintiff has no claim against PNM for punitive damages. This may not preclude a claim against the employees individually. We express no opinion as to whether plaintiff can join individual employees at this time in light of the statute of limitations. *See Galion v. Conmaco Intern., Inc.,* 99 N.M. 403, 658 P.2d 1130 (1983); *DeVargas v. State Ex Rel. N.M. Dept. of Corr.,* 97 N.M. 447, 640 P.2d 1327 (Ct.App.1981); *Mercer v. Morgan,* 86 N.M. 711, 526 P.2d 1304 (Ct.App.1974). To the extent *North II* may be interpreted contrary to our holding here, it is hereby modified.

### Negligence

█ Plaintiff argues that the trial court erred in refusing to allow him to present a negligence theory to the jury. In order to recover damages other than condemnation damages, plaintiff may not rely on a showing that defendant failed to exercise reasonable care. Instead he must prove fraud, bad faith or abuse of discretion on the part of the line crew. An action for this type of willful conduct sounds in trespass, not in negligence. The trial court did not err in refusing to allow plaintiff's negligence claim.

### Expert Witness Fee

█ At trial North called two expert witnesses: one testified about the necessity of the easement and the assessment made by the Commissioners; the other testified about the cost of restoration for the damage done to North's property. North characterizes the first witness's testimony as applying to the condemnation action and the second witness's testimony as applying to the trespass action. He asserts that the trial court should have awarded him two expert witnesses fees since the case involved two separate causes of action.

NMSA 1978, § 38-6-4 B provides:

The District Judge in any case pending in the District Court, may order the payment of a reasonable fee, to be taxed as costs * * * for any witness who qualifies as an expert and who testifies in the cause in person or by deposition. The additional compensation shall include a reasonable fee to compensate the witness for the time required in preparation or investigation prior to the giving of the witness' testimony. The expert witness fee which may be allowed by the Court shall be paid to only one expert witness unless the Court finds that the testimony of more than one expert was reasonably necessary to the prevailing party and that the expert testimony was not cumulative. The total expert witness compensation which may be allowed by the Court to the prevailing party shall not exceed $750.00.

The trial court awarded North $750 to cover expert witness fees. PNM points out that the trespass action and the eminent domain action were consolidated at North's request, and it argues that under *Schwartzman v. Schwartzman Packing Co.,* 99 N.M. 436, 659 P.2d 888 (1983), North could recover no more than $750 as expert witness fees.

Although *Schwartzman* did not deal with consolidated claims, its basic holding applies here, since the testimony of the two experts related to one piece of property which constituted the subject of both claims. The trial court did not err.

### Prejudgment interest

█ Although a recent amendment to NMSA 1978, § 56-8-4 (Cum.Supp.1982) would allow the trial court in its discretion to award prejudgment interest on the trespass claim from the date plaintiff served his complaint upon defendant, the earlier statute applicable in this case does not give

the trial court that power. In spite of the lack of statutory authority, plaintiff argues that the trial court should have the freedom to award prejudgment interest on the basis that it promotes "the expeditious settlement of claims and might discourage defendants from unduly differing [sic] payments to injured Plaintiffs."

We hold that the recent amendment applies prospectively. Thus, the trial court should not have awarded prejudgment interest. The legislature having acted in this area, we will not attempt to apply a different rule from that in effect at the time.

**Conclusion**

In summary, we hold:

(a) PNM had a right to condemn the seven and five foot easements and its action shall proceed in accordance with the eminent domain statutes, Section 42–1–1 *et seq.*

(b) The trial court shall make an initial determination of whether a justiciable issue exists as to the excessive damage, taking additional evidence if deemed necessary. If the court finds an issue does exist, plaintiff may proceed with his trespass claim.

(c) The trespass claim shall apply only to the excessive damage and not to the taking or reasonable damages incidental to the condemnation.

(d) If plaintiff wishes to amend to join the individuals responsible for any excessive damage, leave shall be granted for him to do so, subject to NMSA 1978, Civ.P.R. 15(c) (Repl.Pamp.1980) and cases construing that rule.

The judgment and verdict are set aside, and the case remanded for further proceedings in accordance herewith. The parties shall divide appellate costs equally.

**IT IS SO ORDERED.**

LOPEZ and DONNELLY, JJ., concur.