802 P.2d 1283

Fred LANDAVAZO, Plaintiff–Appellee,

v.

Jose SANCHEZ, Epifania Sanchez, Celso Sanchez, Lillie Chacon, E.B. Sanchez, and the County of Valencia, Defendants–Appellants.

No. 18227.

Supreme Court of New Mexico.

Dec. 20, 1990.

Pedro G. Rael, Los Lunas, for defendants-appellants Jose Sanchez and Lillie Chacon.

Esquibel, Sanchez & Griego, Thomas Esquibel and Michael R. Griego, Los Lunas, for defendant-appellant County of Valencia.

Williams, Conroy & Sims, Anthony J. Williams, Belen, for plaintiff-appellee.

## OPINION

BACA, Justice.

On the court's own motion, the opinion filed December 5, 1990, is hereby with-

drawn and the opinion filed this date is substituted therefor.

This is an appeal from a judgment awarding plaintiff-appellee Landavazo damages in a suit for ejectment and inverse condemnation. The issues revolve around the Juan P. Sanchez Road, which is maintained by the County of Valencia and borders Landavazo's property. This road is also necessary for access to defendants-appellants Sanchezes' property.

Landavazo claims that in 1983, while in the process of maintaining the roadway, the county widened it, and that this constituted a taking of Landavazo's bordering property. In 1985, Landavazo filed suit against the Sanchezes and the county in ejectment and inverse condemnation.

Landavazo introduced evidence in the form of testimony of several witnesses, a survey made after the county widened the road, and a comparison aerial photo taken of the property in 1972 before the widening. This evidence demonstrated a significant change in the boundaries and supported the court's finding that a taking had indeed occurred. The trial court found for Landavazo, determining that evidence existed to hold that the widening was an unlawful taking of his property without compensation. Landavazo was awarded $5,000.00 plus interest, costs, and attorney's fees. The decision of a majority of the court is to affirm on all issues. Part IV of this opinion expresses a dissenting view with regard to attorney's fees; and Justice Montgomery's separate opinion contains the majority view on that issue.

The appellants, County of Valencia and the Sanchezes, raise several points on appeal. Many can be answered in terms of substantial evidence. We will address those issues jointly. The remaining issues are: 1) whether the plaintiff's complaint was sufficient to state a claim upon which relief could be granted; 2) whether the court erred in refusing to grant defendants' default motion on the day of the trial; and 3) whether the award of costs

and attorney's fees was consistent with NMSA 1978, Section 42A–1–25 (Repl. Pamp.1981).

## I. SUBSTANTIAL EVIDENCE

The county claims reversible error in that the evidence failed to establish a precise boundary, the precise value of the property in question, and whether maintenance of the Juan P. Sanchez Road constituted a taking. Appellants Sanchezes on the other hand claim that the trial court committed error by refusing to accept the county's determination that the road was twenty-eight feet wide and by not following the Middle Rio Grande Conservancy District maps to establish boundary lines. These are all questions of substantial evidence.

■ It is not this court's task to reweigh evidence. If substantial evidence supports a trial court's conclusion it will not be disturbed on appeal. *Elephant Butte Resort Marina, Inc. v. Wooldridge,* 102 N.M. 286, 291, 694 P.2d 1351, 1356 (1985). Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion. *Register v. Roberson Constr. Co.,* 106 N.M. 243, 741 P.2d 1364 (1987); *Tapia v. Panhandle Steel Erectors Co.,* 78 N.M. 86, 428 P.2d 625 (1967). Evidence is substantial even if it barely tips the scales in favor of the party bearing the burden of proof. *Lumpkins v. McPhee,* 59 N.M. 442, 453, 286 P.2d 299, 310 (1955). Landavazo presented a survey prepared by a professional surveyor (Carlton survey) that, when compared with an aerial photo of the property in 1972 taken before the widening, showed a change in boundaries. This, together with testimonial and other evidence, is sufficient to tip the scales in Landavazo's favor. This court views the evidence in the light most favorable to support the findings of the trial court. *Lujan v. Pendaries Properties, Inc.,* 96 N.M. 771, 774, 635 P.2d 580, 583 (1981); *Tapia,* 78 N.M. at 89, 428 P.2d at 628. This is all we need determine for

these boundary issues: "On appeal, the scope of review is limited to examining the record only to determine if there is substantial evidence to support the district court's ruling." *Brannock v. Brannock*, 104 N.M. 385, 387, 722 P.2d 636, 638 (1986).

■ In determining the value of the property taken, the court computed the actual acreage taken by adding the distance from point to point along the roadway as established by the Carlton survey and multiplying the resulting sum by thirteen feet. The thirteen feet represented the difference between fifteen feet, the average width of the roadway prior to the taking, and twenty-eight feet, the average width of the roadway after the taking. The court then multiplied the resulting square footage of 19,942 square feet by the stipulated value of the land at $0.28 per square foot. The court then rounded the figure down to $5,000. No evidence of either diminution or enhancement of the remaining land was offered. Based upon the evidence the court necessarily concluded that the value of the remaining property was the same before and after the taking. This constituted substantial evidence for the damages found by the court.

## II. DID THE COMPLAINT FAIL TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED?

■ The county claims that because Landavazo cited a repealed statute in his complaint, he failed to state a claim upon which relief could be granted. This is an ill-founded assertion. Landavazo set out, with some specificity, his claim giving notice to the county, enabling it to defend. Nothing more is required. The purpose of pleadings is to facilitate a proper decision on the merits, not to decide the outcome of the entire proceeding on a clumsily drafted complaint. *Hambaugh v. Peoples*, 75 N.M. 144, 401 P.2d 777 (1965). A proper decision on the merits is always preferred over a dismissal on the pleadings. The words "inverse condemnation" were used in the pleading. Further, language in the pleading was sufficient to alert the county that indeed inverse condemnation was intended even though the wrong statute was cited. Substantial justice was accomplished by accepting the complaint as sufficient. *Morrison v. Wyrsch*, 93 N.M. 556, 603 P.2d 295 (1979). Finally, a specific citation to a statute is unnecessary in a complaint. It is sufficient for a party to refer to the statute "in some general term with convenient certainty." SCRA 1986, 1–009(H). Landavazo was sufficiently specific in his complaint and stated a claim upon which relief could be granted.

## III. MOTION FOR DEFAULT

■ The trial court acted within its discretion in denying the Sanchezes' motion for default. Landavazo had failed to respond to their counterclaim at the time of trial. The Sanchezes did not comply with SCRA 1986, 1–055, which requires an affidavit, a written application for default, and service upon the defaulting party no less than three days before the hearing. Here, when the court was confronted with a motion for default on the day of trial, it properly denied the motion and tried the matter on its merits. Judgments by default are not favored in New Mexico. *Rodriguez v. Conant*, 105 N.M. 746, 737 P.2d 527 (1987). Whether a default should be granted lies within the discretion of the trial court. *Hubbard v. Howell*, 94 N.M. 36, 607 P.2d 123 (1980); *see* SCRA 1986, 1–055. The trial court was well within the bounds of its discretion in denying a default judgment.

## IV. ATTORNEY'S FEES AND COSTS

With regard to attorney's fees this opinion expresses a dissenting view. The trial court erred in awarding attorney's fees under NMSA 1978, Section 42A–1–25 (Repl. Pamp.1981). Attorney's fees are provided in condemnation proceedings under this statute in three instances: 1) when the condemnor has abandoned condemnation; 2) when the condemnation proceedings have been dismissed; or 3) when there is a

final determination that the condemnor *does not have the right to take the property.* None of the three instances is applicable in this case.

Landavazo argues that his original proceeding before the county commission seeking redress for the taking constituted a "condemnation proceeding." He contends that the county went no further than to declare the width of the road—finding no taking had occurred—and invited him to sue, and these actions constituted an abandonment of the condemnation proceeding. The above actions of the county commission were not a condemnation proceeding; hence there was no abandonment. There was no later abandonment or dismissal of condemnation proceedings—the county vigorously pursued this matter when sued by Landavazo in inverse condemnation. The only other possible theory to award Landavazo attorney's fees under this statute is under Subsection (3). Landavazo did indeed "win" below and was awarded money damages for the county's taking of his property. There was, however, no determination that the county *did not have the right* to take the property sought, but merely that it must pay for it.

Section 42A–1–25(A)(3) provides for an award of litigation expenses to a condemnee when "there is a final determination that the condemnor *does not have a right* to take the property sought to be acquired in the condemnation proceeding." (Emphasis added.)

The trial court in this case necessarily determined that the county had the right to take the property when it required the county to pay the Sanchezes for the land. Had it determined the county had no right to take the property, it would neither have allowed the taking nor required payment for the property. There *was not* a determination that the county had no right to take the property. Conclusion of law no. 5 stated: "The County of Valencia had no right to take Plaintiff's property *without paying compensation.*" (Emphasis added.) It follows that when the trial court mandated the payment of compensation it also found a right in the county to take the property.

A statute must be construed according to its plain meaning. *Brown v. Bowling,* 56 N.M. 96, 240 P.2d 846 (1952); *Security Escrow Corp. v. State Taxation & Revenue Dep't,* 107 N.M. 540, 760 P.2d 1306 (Ct.App.1988). Where a statute's terms are plain and unambiguous there is no room for construction. *Hendricks v. Hendricks,* 55 N.M. 51, 226 P.2d 464 (1950); *State v. Michael R.,* 107 N.M. 794, 765 P.2d 767 (Ct.App.), *cert. denied,* 107 N.M. 748, 764 P.2d 879 (1988).

The distinction is not between traditional condemnation proceedings and inverse condemnation proceedings. The statutory language is plain and should be interpreted in the same manner regardless of whether the proceeding is instituted by the state or by the condemnee. Eminent domain is liberally interpreted in this state in favor of the state. The state is rarely precluded from pursuing a taking.

> The decision of the grantee of the power of eminent domain as to the necessity, expediency, or propriety of exercising that power is political, legislative or administrative, and its *determination is conclusive and not subject to judicial review,* absent fraud, bad faith, or clear abuse of discretion. The determination of the question of necessity may not be easily or casually overthrown by the courts, but strong and convincing evidence of the most conclusive character is required to upset the determination.

*North v. Public Serv. Co. of New Mexico,* 101 N.M. 222, 229, 680 P.2d 603, 609 (Ct. App.1983), *cert. denied,* 101 N.M. 11, 677 P.2d 624 (1984) (emphasis added) (citation omitted).

The trial court ordered the county to pay just compensation for the taking of land it had a right to take, but had never paid for. This is not equivalent to a determination by the district court that there was no necessity and therefore no right to take. There has been no showing, as required by

*North,* of fraud, bad faith, or a clear abuse of discretion by strong and convincing evidence of the most conclusive character; therefore, it is inappropriate to overturn the county's determination that this taking was necessary. In my view, attorney's fees may not be awarded. The trial court does have the jurisdiction to award all other costs to the prevailing party. The judgment of the trial court is affirmed. Justice Ransom and the author of this opinion dissent as to the award of attorney's fees.

IT IS SO ORDERED.

MONTGOMERY, J., specially concurred and filed an opinion with which SOSA, C.J., and PATRICIO M. SERNA, District Judge, joined.

MONTGOMERY, Justice (specially concurring).

██ We concur with Justice Baca's opinion, except that we disagree with his conclusion that the trial court erred in awarding attorney's fees. A majority of the Court has concluded that Mr. Landavazo could recover his attorney's fees from the County in this inverse condemnation action. This opinion therefore announces the ruling of the Court on this issue and explains our reasoning.

We begin with recognition of the thoroughly settled law in New Mexico that a landowner's exclusive remedy for a public (or other—e.g., a private water-right holder or a public utility) authority's taking of his or her property in the exercise of the authority's power of eminent domain, when the authority fails to pay or even offer just compensation, is to sue the authority in an action for inverse condemnation. *Kaiser Steel Corp. v. W.S. Ranch Co.,* 81 N.M. 414, 421–22, 467 P.2d 986, 993–94 (1970); *Garver v. Public Serv. Co. of New Mexico,* 77 N.M. 262, 269–70, 421 P.2d 788, 792–94 (1966); *North v. Public Serv. Co. of New Mexico,* 101 N.M. 222, 226, 680 P.2d 603, 606 (Ct.App.), *cert. denied,* 101 N.M. 11, 677 P.2d 624 (1984).

In this case, the county sent its road grader out to Mr. Landavazo's property to widen the Sanchez road. The result was that almost 20,000 square feet of Mr. Landavazo's farmland were stripped away and became part of the widened roadway. When Landavazo appealed to the county to rectify the situation, the county first retained a surveyor to determine the width of the widened road and then told Mr. Landavazo that, if he did not agree with the county's actions, he could "take it to court."

At that point, under the thoroughly settled New Mexico law just mentioned, Mr. Landavazo's options were severely limited. He could not successfully sue the county in ejectment, or for trespass, or for an injunction, or for compensatory or punitive damages. His only recourse, in order to obtain the "just compensation" that was his due under N.M. Const. Article II, Section 20—the $5,000 that the district court ultimately awarded him—was to hire an attorney and incur the $15,000 attorney's fee that the court ultimately found he reasonably incurred.

The county had been instructed by our Eminent Domain Code to "make reasonable and diligent efforts to acquire [the] property by negotiation." NMSA 1978, § 42A–1–4 (Repl.Pamp.1981). Section 42A–1–6 provided, and still provides, that an action to condemn property "may not" [i.e., shall not] be maintained unless the condemnor makes a good faith effort to acquire the property by purchase before commencing the action. The Code contained, and still contains, other provisions protecting a landowner like Mr. Landavazo, such as Section 42A–1–5 (providing for appraisal to determine just compensation) and Section 42A–1–10 (providing for deposit of probable compensation before entry by the condemnor is permitted). Nevertheless, the county chose to ignore these provisions, to simply *take* Mr. Landavazo's property, and to tell him that, if he did not like it, he could "take it to court."

Had the county proceeded by direct condemnation and, under Section 42A–1–5(E), tendered the amount it believed was just

compensation, Mr. Landavazo would have had an election. He could have accepted the amount tendered and not hired an attorney, or he could have engaged an attorney to seek a greater award than the amount tendered. Had he done the latter, the absence of a provision in the Code awarding him his attorney's fees would have been appropriate on the theory that he could pay his attorney out of the increased award if he were successful; if not successful, he would have no one but himself to blame for not accepting the amount tendered in the first place.

The county, however, did not proceed by direct condemnation and did not otherwise attempt to negotiate with Mr. Landavazo. The district court concluded that its taking of Landavazo's property without compensation was "unlawful" and that the county "had no right" to take the property without paying compensation. On these facts, and in light of our statutory scheme, we believe the district court's conclusions were correct.

The question before us is whether Section 42A-1-25(A)(3) should be construed to permit an award of attorney's fees to the condemnee in an inverse condemnation action. Although the statute undoubtedly is drafted with the direct condemnation situation primarily in mind, it does not on its face preclude application to the inverse condemnation situation. The statute mandates award of litigation expenses under any of the prescribed circumstances simply to "the condemnee." At the same time, the section providing for inverse condemnation, Section 42A-1-29(A) (Cum.Supp.1990), refers to the plaintiff in an inverse condemnation suit as the "condemnee," so the possibility of an award of litigation expenses to the plaintiff in an inverse condemnation action is expressly left open by Section 42A-1-25.

Hence the necessity of construing the phrase "does not have a right" in this section cannot be avoided. The phrase can be construed as Justices Baca and Ransom construe it—namely, by holding that it applies only when the court determines that the public authority either did not have the power of eminent domain in the first place or that the taking was not for a public purpose. But if so construed, the statute becomes somewhat meaningless in the inverse condemnation situation, because then the landowner will not be limited to inverse condemnation as his exclusive remedy; in fact, he will not even *have* the right of inverse condemnation, because the taker of the property, by hypothesis, will not have been exercising the power of condemnation. Lacking the "right" (i.e., the power) to condemn the property, the taker would be liable in ejectment, or for trespass, or for compensatory or punitive damages. The landowner would not be limited to an award of "just compensation"—the difference between the value of his property before the taking and that afterwards. Inverse condemnation would have no application.

It seems to us to make more sense to hold that the phrase "does not have a right" in the inverse condemnation situation means that the condemning authority has proceeded wrongfully in taking the landowner's property without paying or offering just compensation. Such an interpretation is consistent with the measures in the Eminent Domain Code, referred to above, protecting the landowner from abuse and requiring the condemnor to proceed by way of direct condemnation. Our construction has the salutary effect of encouraging entities with the power of eminent domain to proceed under the Eminent Domain Code and offer just compensation. It discourages them from simply taking property and forcing landowners to sue for what would have been offered had the condemnors proceeded lawfully in the first place.

Our construction is also consistent with Section 213 of the American Law Institute's *Model Eminent Domain Code* (1974), which provides for an award of the plaintiff's litigation expenses in an inverse condemnation action. The section also pro-

vides that a condemnor "shall" commence a condemnation action when it wishes to acquire property and "shall not" intentionally make it necessary for the landowner to commence an action. These admonitions reflect the same approach as is taken in our Eminent Domain Code. If a condemnor's taking is unintentional, or if a landowner sues for inadvertent damaging of his property, then the basis for applying Section 42A–1–25 to the condemnor's actions—i.e., that the actions were wrongful; that the condemnor "did not have the right" to take them—might not be present. But here, where the county deliberately chose to take the property first and litigate afterwards, forcing the landowner to initiate the lawsuit, the district court properly concluded that the county did not have the right to take the property.

Accordingly, the judgment awarding attorney's fees is affirmed.

SOSA, C.J., and PATRICIO M. SERNA, District Judge, concur.