This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**ALBERT LOPEZ,**

    Petitioner-Appellee,

v.                                                            **NO. 31,217**

**SYLVIA LOPEZ,**

    Respondent-Appellant,

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**James T. Martin, District Judge**

The Laws Offices of Michael J. Dugan, LLC
Michael J. Dugan
Las Cruces, NM

for Appellee

The Joshua Foundation
Martin H. Poel
Las Cruces, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1}    Wife appeals a judgment and final decree of dissolution of marriage,

challenging various divisions of the marital property, the award of Husband's attorney fees, and the award of spousal support to her. For the reasons discussed below, we affirm.

**I.    BACKGROUND**

{2}    On August 17, 2005, Husband filed a petition for dissolution of marriage. After a long and contentious proceeding, the district court filed its judgment and final decree of dissolution of marriage on November 24, 2009. Two real properties owned by the parties were determined to be community property, with the residence allocated to Wife and the business property to Husband. An undeveloped lot was determined to be separate property with a $6,000 community lien against the lot. A $36,208 tax debt was allocated to Husband, and he was awarded his individual retirement account (IRA) valued at $126,000. The district court determined that the lengthy litigation had resulted primarily due to Wife's insistence on an unrealistic valuation of the community business and ordered her to pay Husband's attorney fees and costs in the amount of $30,805.50. Lastly, Husband was ordered to pay spousal support of $450 per month to Wife for 120 months.

{3}    Wife appealed to this Court and Husband filed a notice of cross-appeal. After Husband failed to timely file an answer brief in Wife's appeal or a brief in chief in his cross-appeal, we dismissed the cross-appeal and notified the parties by order on March

7, 2012, that Wife's appeal would be submitted to a panel for decision only on the brief in chief. Our order notwithstanding, and without leave of the court, Husband filed an answer brief and brief in chief on the cross appeal. Pursuant to our March 7, 2012 order, we have not considered them.

## II. DISCUSSION

{4} Wife appeals, challenging: (1) the community status of the three properties; (2) the amount of the tax debt allocated to Husband; (3) the amount and allocation of Husband's IRA account; (4) the award of Husband's attorney fees and costs; and (5) the amount of spousal support awarded to her. To the extent Wife contends that the decision of the district court on these issues constitutes punitive damages or demonstrate bias by the district court, her arguments are undeveloped in her brief and unsupported by citations to the record or applicable case law and we do not consider them. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that the appellate courts of New Mexico need not entertain inadequately developed arguments). We address each issue in turn.

### 1. Community Status of Properties

{5} Over the course of their marriage, the parties acquired three properties: a marital residence located on Northwind Road, property on S. Alameda Boulevard where the community business is located, and an undeveloped lot on Kansas Street

that was a gift from Wife's father. Prior to filing for divorce, Husband signed a quitclaim deed on each property, transferring the properties to Wife as her sole and separate property in return for a stated consideration. After hearing conflicting testimony from the parties regarding their intentions concerning the deeds, the district court determined that "[t]he marital residence located at 5033 Northwind is a community asset with a value of $350,000, and shall be allocated to [Wife]," "[t]he property located at 303 S. Alameda is a community asset with a value of $195,000, which shall be taken by [Husband] as his sole and separate property," and "[t]he property located at Kansas St. is the sole and separate property of [Wife]" with "a community lien on the property in the amount of $6,000 . . . allocated to [Wife]."

{6}     Wife's argument focuses on the validity of the quitclaim deeds and whether the district court committed reversible error in not recognizing the deeds as "unambiguous written manifestations of signed, and notarized contracts through which [Husband] conveyed all his interest in the real properties . . . to [Wife] as her sole and separate property in return for consideration paid[.]" *See* NMSA 1978, § 47-1-30 (1953) (stating that "[a] deed in substance following the form entitled 'quitclaim deed' shall, when duly executed, have the force and effect of a deed in fee simple to the grantee, his heirs and assigns, to his and their own use of any interest the grantor owns in the premises, without warranty"). However, the existence of a valid quitclaim deed does

4

not conclusively establish the transmutation of property. *See Allen v. Allen*, 98 N.M. 652, 654-55, 651 P.2d 1296, 1298-99 (1982). Thus, we address Wife's argument that the district court erred in determining that the properties were community in nature, despite the quitclaim deeds indicating otherwise. The district court decisions in making an equitable division of community property and debts are reviewed for an abuse of discretion, but the threshold question of whether a particular asset is community property is a question of law reviewed de novo. *Arnold v. Arnold*, 2003-NMCA-114, ¶ 6, 134 N.M. 381, 77 P.3d 285.

{7}     We begin by noting that despite Wife's apparent argument to the contrary, the Kansas lot was awarded to her as her sole and separate property. The $6,000 amount for the Kansas lot listed on Exhibit 1 of the judgment and final decree is a community lien for the amount which Husband testified were spent on taxes and cleaning of the property during the marriage. The community is entitled to a lien against the separate property of a spouse for any expenses incurred in preserving and improving the property. *Bustos v. Bustos*, 100 N.M. 556, 558, 673 P.2d 1289, 1291 (1983). Thus, we do not address Wife's argument regarding the quitclaim deed on the Kansas property.

{8}     "Property acquired during marriage by either husband or wife, or both, is presumed to be community property." NMSA 1978, § 40-3-12(A) (1973). The

Northwind property was purchased during the marriage in 2000 with community funds, and the Alameda property was also purchased during the marriage in 2003. Thus, both properties are presumed to be community property. *See Michelson v. Michelson*, 89 N.M. 282, 288, 551 P.2d 638, 644 (1976) ("Property acquired in New Mexico takes its status as community or separate property at the time and by the manner of its acquisition[.]" (alteration, internal quotation marks, and citation omitted)).

**{9}** "Transmutation is a general term used to describe arrangements between spouses to convert property from separate property to community property and vice versa. While transmutation is recognized, the party alleging the transmutation must establish the transmutation of property . . . by clear, strong and convincing proof." *Allen*, 98 N.M. at 654, 651 P.2d at 1298 (citation omitted). Further, the court's power to apportion assets in an equitable manner includes the ability to give effect to the parties' intentions, whether or not the parties strictly comply with the community property or debt statutes. *Fernandez v. Fernandez*, 111 N.M. 442, 444, 806 P.2d 582, 584 (Ct. App. 1991).

**{10}** The parties presented conflicting testimony about their intentions concerning the quitclaim deeds. Wife testified that Husband signed the deeds granting her the property in exchange for her interest in the community business as a potential

6

settlement of their anticipated divorce. Husband testified that he signed the deed for the Northwind property in reliance on Wife's statements that he needed to sign the document in order to allow Wife to sell the residence. Husband further testified that he had no intent to give up his interest in the Northwind property by signing the deed and that he expected the proceeds of the sale to be split. As to the Alameda property, Husband asserted that he had signed what he believed was a second deed for the Northwind property, but Wife later attached a description of the Alameda property and filed it as the Alameda quitclaim deed. Husband further stated that he never intended to sign a quitclaim deed for the Alameda property. Husband's testimony is supported by the fact that the community business is located on the Alameda property, and there is no evidence that Husband received any payment for the properties, despite the language indicating otherwise on the deeds.

{11}     After reviewing the record, we are not convinced that the district court erred in concluding that Wife failed to meet her burden of proof that the Northwind and Alameda properties were transmuted into her separate property. *See Allen*, 98 N.M. at 654-55, 651 P.2d at 1298-99 (holding that the appellee had not met his burden of clear, strong, and convincing proof to establish transmutation of the appellant's separate property, despite a valid quitclaim deed executed by the appellant to the community during the marriage). Thus, the district court is affirmed.

## 2.    Tax Debt

{12}    The district court determined that "[t]he parties owe(d) $36,[208] in taxes, which shall be allocated to [Husband]."  On appeal, Wife argues that "the [district c]ourt's decision to award a tax debt to [Husband] in the amount of $36,208 failed to meet the substantial evidence standard" because "[Husband] offered no evidence that there is a tax liability, much less the value of it, other than his unsupported testimony."

{13}    In reviewing a sufficiency of the evidence claim, we view the evidence in the light most favorable to the prevailing party and disregard evidence and inferences to the contrary.  *Weidler v. Big J Enters., Inc.*, 1998-NMCA-021, ¶ 30, 124 N.M. 591, 953 P.2d 1089.  "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached."  *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177.  "Additionally we will not reweigh the evidence nor substitute our judgment for that of the fact finder."  *Id.*

{14}    Husband testified that the community had incurred tax liabilities of approximately $36,208 during the 2005-2008 tax years. Wife's testimony was limited to explaining that she was unable to access to the necessary information to enable her to state a definitive amount of the debt.  "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion."

8

*Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990).  Husband's testimony constitutes sufficient evidence to support the district court's finding regarding the value of the tax liabilities.  Thus, we affirm the district court.

**3.     IRA Account**

{15}     An IRA was owned by the community when Husband filed for divorce. Husband admitted that because he had withdrawn money from the IRA to make payments and pay other expenses during the divorce proceedings, the value of the IRA had diminished from $375,945 in 1999, to $126,000 in August 2005, to $0 on the second day of trial on October 13, 2009.  These withdrawals violated the district court interim order.

{16}     During a hearing on July 25, 2007, the district court stated that "I'm going to order you [Husband] to go back to August 17, 2005, and you're going to put together every little scrap of paper that identifies how you spent this IRA money.  Because as of August 17, 2005, you are going to provide a bank statement which tells me and opposing counsel what the value of that IRA was.  And I will allow you to deduct reasonable expenses against that IRA.  If you're unable to produce a receipt to justify how you spent that money, I'm going to award that value to [Wife]."  An order was entered a year later on July 24, 2008 ("July 24th order"), which stated "[t]he parties shall identify the value of any retirement accounts at the time of filing [by Husband]

in this matter and shall further identify all withdrawals and expenditures from that account. The value of any unidentified expenditures or withdrawals shall be awarded to the other party should this case not reach settlement." The district court later allocated the retirement account in the amount of $126,000 to Husband. There is no evidence that Husband ever submitted any documentation to the court concerning his withdrawals from the IRA.

{17} Wife first argues that the district court committed reversible error when the written order was filed on grounds that it did not contain language requiring Husband to produce documentation and the district court lost jurisdiction to amend its ruling from the hearing after sixty days. We find no merit in Wife's argument that the verbal order of the district court was amended in the July 24th order. The July 24th order clearly ordered that "[t]he parties shall identify the value of any retirement accounts at the time of filing [by Husband] in this matter and shall further identify all withdrawals and expenditures from that account. The value of any unidentified expenditures or withdrawals shall be awarded to the other party should this case not reach settlement."

{18} Wife next challenges the finding of the district court that the IRA was worth $126,000 as unsupported by substantial evidence because "[t]he [district c]ourt accepted [Husband]'s unsupported claim that the community IRA was only worth

10

$126,000." As noted earlier, Husband testified that the value of the IRA was $126,000 in August 2005 when he filed for divorce. Wife gave no testimony on the value of the IRA. The only evidence regarding the value of the IRA was the testimony by Husband, which constitutes substantial evidence in support of the finding of the district court. *See Lahr v. Lahr*, 82 N.M. 223, 224, 478 P.2d 551, 552 (1970) (stating that "[an owner's] testimony alone constitutes substantial evidence to support the trial court's valuation at that figure").

{19}     Lastly, Wife argues that the district court committed reversible error when it failed to award the full value of the IRA to her pursuant to its order from the July 25, 2007 hearing. We do not reach the merits of Wife's argument because it has not been preserved for consideration on appeal.

{20}     "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987). After review of the record, we are unable to determine that Wife brought this argument before the district court and Wife has failed to cite in her brief in chief how this issue was preserved for our review. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's

11

ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue."). Consequently, we do not address Wife's final argument regarding the district court's allocation of the IRA.

**4.      Husband's Attorney Fees**

{21}      The district court determined that "[b]ased upon the parties' relative positions regarding the value of [the community business], the ultimate determination of the value, and the cost of litigation based upon the parties' positions, [Wife] is ordered to pay all of [Husband]'s legal fees and costs associated with this litigation. [Husband's attorney's] hourly rate of $190.00 per hour is reasonable. . . . This amount is due and payable to [Husband]. [Wife] shall pay $30,805.50 to [Husband's attorney's trust account] within 30 days of the date of entry of this Order." The basis of the award of Husband's attorney fees is the affidavit submitted by Husband's attorney.

{22}      Following entry of the judgment and final decree, both parties filed motions to amend, challenging various aspects of the order. With regard to Husband's attorney fees, Wife questioned the validity of the attorney's affidavit and argued that the reasoning behind the award of attorney fees was erroneous because the delays in the proceedings were caused by Husband and that Husband was in a better place to pay his own attorney fees than Wife. The district court denied Wife's motion, citing Rule 1-127 NMRA and noting that its decision to award Husband his attorney fees was

based on: (1) the fact that Wife took significantly more assets than Husband; (2) Wife's unreasonable insistence that the community business was worth $1,000,000, when it was actually valued at $27,000; (3) Wife's use of various assets and income during the litigation; and (4) Wife's lack of success on the merits. The district court did not address Wife's argument regarding the use of the attorney's affidavit in support of the amount of attorney fees.

{23} Following the hearing, but prior to entry of the amended final decree, Wife filed a second motion to amend the attorney fees, focusing on the attorney's affidavit. On March 22, 2011, the district court filed the amended final decree, stating that "[Wife]'s request regarding attorney fees is denied." A hearing was then held on Wife's second motion on April 14, 2011. At the hearing, the parties made their arguments regarding the attorney's affidavit, and the district court requested that Husband's attorney submit his billing records for an in camera review. Husband's attorney was given two weeks to submit his billing records, at which point the district court would review them and rule on whether the amount in the affidavit was reasonable.

{24} Before the district court ruled on Wife's second motion to amend, she filed notice of appeal with this Court, once again disputing the attorney's affidavit and arguing at length regarding the reasons given by the district court in support of its

decision and the punitive nature of the award. However, these arguments on Husband's attorney fees are not properly before us at this time.

**{25}** "[O]ur appellate jurisdiction is limited to review of 'any final judgment or decision, any interlocutory order or decision which practically disposes of the merits of the action, or any final order after entry of judgment which affects substantial rights[.]'" *Capco Acquisub, Inc. v. Greka Energy Corp.*, 2007-NMCA-011, ¶ 17, 140 N.M. 920, 149 P.3d 1017 (quoting NMSA 1978, § 39-3-2 (1966)). "Where a judgment declares the rights and liabilities of the parties to the underlying controversy, a question remaining to be decided thereafter will not prevent the judgment from being final if resolution of that question will not alter the judgment or moot or revise decisions embodied therein." *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 238, 824 P.2d 1033, 1040 (1992). While Wife's pending motion to amend does not impact her other issues on appeal, we decline to consider her arguments regarding Husband's attorney fees until after the district court has had an opportunity to rule on her second motion to amend.

**5.     Spousal Support**

**{26}** The district court determined that "[i]n light of the length of the marriage, the parties['] respective ages, health, income, ability to support themselves, spousal support shall be ordered. [Husband] shall pay to [Wife] the amount of $450 per

month in nonmodifiable spousal support for 120 months beginning November 2009." Wife argues that the district court committed reversible error in its award because it is unreasonable.

{27} "The decision to grant or deny alimony is within the sound discretion of the trial court, and its decision will be altered only upon a showing of an abuse of that discretion." *Ellsworth v. Ellsworth*, 97 N.M. 133, 134, 637 P.2d 564, 565 (1981). In determining whether an alimony award is just and proper, the district court should consider the following:

> (1) the age and health of and the means of support for the respective spouses;
> (2) the current and future earnings and the earning capacity of the respective spouses;
> (3) the good-faith efforts of the respective spouses to maintain employment or to become self-supporting;
> (4) the reasonable needs of the respective spouses, including:
> (a) the standard of living of the respective spouses during the term of the marriage;
> (b) the maintenance of medical insurance for the respective spouses; and
> (c) the appropriateness of life insurance, including its availability and cost, insuring the life of the person who is to pay support to secure the payments, with any life insurance proceeds paid on the death of the paying spouse to be in lieu of further support;
> (5) the duration of the marriage;
> (6) the amount of the property awarded or confirmed to the respective spouses;
> (7) the type and nature of the respective spouses' assets; provided that potential proceeds from the sale of property by either spouse shall not be considered by the court, unless required by exceptional circumstances and the need to be fair to the parties;

15

(8)    the type and nature of the respective spouses' liabilities;

(9)    income produced by property owned by the respective spouses; and

(10)   agreements entered into by the spouses in contemplation of the dissolution of marriage or legal separation.

NMSA 1978, § 40-4-7(E) (1997). The district court abuses its discretion when it fails to consider these relevant statutory factors in determining an award or fixes an amount which is contrary to all reason. *See Weaver v. Weaver*, 100 N.M. 165, 167, 667 P.2d 970, 972 (1983); *Seymour v. Seymour*, 89 N.M. 752, 755, 557 P.2d 1101, 1104 (1976).

**{28}** Wife refers to the value of the business, the length of the marriage, the annual income earned during the marriage, and the division of property to argue that the district court failed to consider the statutory factors in its decision. However, the language of the judgment and final decree and the oral ruling of the district court demonstrate that the district court did in fact consider the statutory factors in it awarding spousal support to Wife. Wife makes no further argument on this issue. *Headley*, 2005-NMCA-045, ¶ 15 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). We are unpersuaded that the district court abused its discretion in its award of spousal support.

**CONCLUSION**

**{29}** The district court is affirmed.

**{30}** **IT IS SO ORDERED.**

16

                                        _____

                                        **MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Chief Judge**

_____

**LINDA M. VANZI, Judge**