635 P.2d 580

James E. LUJAN and Terri Lynn Lujan, his wife, Plaintiffs-Appellees and Cross-Appellants,

v.

PENDARIES PROPERTIES, INC., a New Mexico Corporation, et al., Defendants-Appellees and Cross-Appellees.

PPI, INC., formerly known as Pendaries Properties, Inc., a New Mexico Corporation, Plaintiff-Appellee and Cross-Appellee,

v.

FIRST NATIONAL BANK OF SANTA FE, and C. D. Leon and Donna Leon, Defendants-Appellants and Cross-Appellees.

No. 12995.

Supreme Court of New Mexico.

Oct. 7, 1981.

Rehearing Denied Nov. 2, 1981.

Sommer, Lawler, Scheuer & Simons, Joseph A. Sommer, Santa Fe, for defendants-appellants and cross-appellees.

Solomon, Roth & VanAmberg, F. Joel Roth, Santa Fe, for plaintiffs-appellees and cross-appellants.

Michael L. Gregory, Las Vegas, Robert P. Beckham, Los Angeles, Cal., for plaintiff-appellees and cross-appellee.

## OPINION

RIORDAN, Justice.

Plaintiffs, James and Terri Lynn Lujan (Lujan), filed an action for specific performance of a real estate contract, damages for loss of benefit of bargain, failure of consideration, loss of income, mental anguish, and punitive damages against defendants, PPI, Inc., formerly known as Pendaries Properties, Inc., (PPI), C.D. and Donna Leon (Leon), Ten Rociada Corporation (Rociada), and Diversified Mortgage Investors Inc. (DMI). Lujan also sought to rescind the portion of the real estate contract concerning reconveyance of certain water rights. Prior to the trial on the merits, defendants Rociada and DMI were dismissed by way of summary judgment. This case was consolidated for trial with PPI's action seeking damages and specific performance of obligations from defendants First National Bank of Santa Fe, and Leon.

The trial court entered judgment in favor of First National Bank of Santa Fe, awarded Lujan $4,160.00 against PPI and Leon for loss of the benefit of the bargain, and ordered PPI to convey the property in question to Lujan subject to certain covenants, conditions and restrictions upon payment by Lujan of the sum owing under the contract. The court also awarded Lujan $10,000.00 punitive damages against Leon.

Lujan appeals from that portion of the judgment which subjects the property to covenants, conditions and restrictions. Leon appeals the award of $4,160.00 compensatory damages and $10,000.00 punitive damages. We reverse as to punitive damages and affirm as to all other issues.

The issues on appeal are:

I. Whether the trial court erred in awarding $4,160.00 for loss of benefit of bargain;

II. Whether the evidence warranted the award of $10,000.00 punitive damages; and

III. Whether the trial court erred in finding the January 14, 1975 purchase agreement and supplement with its covenants, conditions and restrictions to be the operative agreement between PPI and Lujan.

In June 1972, PPI purchased a sub-division known as Pendaries Village from Leon to develop a recreational community.

The court found that PPI assured Leon that it would continue to develop Pendaries Village and construct certain amenities for the project, including the creation of an equestrian area offering both boarding and riding privileges to potential lot buyers and current property owners at Pendaries Village. PPI intended to develop and revitalize an approximately five-acre parcel, containing then run-down and poorly maintained barns, shed, and corrals, to create the equestrian unit.

On December 27, 1972, Lujan, then a salesman for PPI at Pendaries Village, purchased from PPI the five-acre equestrian area under an installment land sales contract. The agreement provided for the delivery of a deed to Lujan upon payment of the entire contract price. To insure that an adequate equestrian unit was developed on the five acres, PPI agreed to construct and did construct $23,000.00 of improvements on the property. Lujan agreed to restrict the property's future use to the operation of an equestrian unit for the benefit of prospective buyers and property owners at Pendaries Village, and agreed to provide horses for that purpose.

On September 26, 1973, PPI granted Lujan an option to purchase a 14.45 acre parcel adjacent to the five-acre equestrian area for $27,500.00.

On July 10, 1974, Lujan and PPI agreed through correspondence that Lujan would

sell the equity in 19 lots in Pendaries Village, which he was purchasing, to PPI for, the following considerations, among others;

(a) A thirty-acre parcel of land at Pendaries Village known as the "alfalfa patch", and

(b) Water rights to the "alfalfa patch".

On July 18, 1974, PPI and Lujan, by supplement to the July 10, 1974 letter agreement, agreed to substitute a four-inch water line to the "alfalfa patch" to be constructed by PPI in lieu of PPI's conveying the water rights to said parcel. Lujan received all consideration promised in the July 10, 1974 agreement, as amended on July 18, 1974, except the four-inch water line.

On December 19, 1974, PPI and Lujan executed a memorandum of understanding. In return for a release by Lujan of PPI's obligation to construct the four-inch water line, PPI agreed to pay Lujan $1,500.00 for the purpose of drilling a well on the "alfalfa patch". PPI further agreed to sell Lujan the 14.45 acre parcel adjacent to the equestrian area, on which he had an option, for $1,000 per acre rather than the option price of $27,500.00. The parties agreed that PPI would prepare and forward a more definitive agreement to cover the memorandum of understanding.

Lujan and PPI met again on January 14, 1975. Lujan then requested further consideration for his release of PPI's obligation to provide water for the "alfalfa patch". PPI agreed to sell Lujan the five-acre equestrian area and the 14.45 acres for a total of $41,742.72, the previous price for the equestrian area alone. Lujan and PPI executed a real estate purchase agreement, together with supplement, superceding the parties' memorandum of understanding. PPI also delivered to Lujan the $1,500.00 check for the purpose of drilling a well on the "alfalfa patch" as previously agreed. To effect the agreement, Lujan executed a separate release relieving PPI of its obligation to construct the four-inch water line to the "alfalfa patch", and releasing Lujan's claims for water rights.

PPI assigned its interest in the real estate purchase agreement to DMI. In May 1976, the balance due DMI for the land in question was $41,600.20. DMI agreed to give Lujan a 10% discount if he paid the contract off in full. The trial court found that in reliance upon DMI's offer, Lujan, on or about May 27, 1976, tendered to DMI the discounted price whereupon DMI forwarded a warranty deed to the escrow agent. Demand was then made on the trustee, First National Bank of Santa Fe, under the Leon-PPI deed of trust to release the property from the lien imposed by the deed of trust. Upon instructions from Leon, the trustee refused to grant a release and as a result Lujan was unable to take advantage of the 10% discount ($4,160.00) offered by DMI.

I. *Loss of Benefit of Bargain*

Whether the trial court erred in awarding Lujan compensatory damages against Leon and PPI depends in part upon the interpretation of the deed of trust between Leon and PPI. Paragraph four of the deed of trust limits the property PPI may subdivide and sell until substantially all of certain lots are developed and sold. Paragraph six, however, allows PPI to obtain a release from the lien on property in order to construct amenities or other improvements.

Leon claims his refusal to release the property to Lujan was justified under paragraph four of the deed to protect his security and prevent the premature development of the more desirable land. He also asserts that he was not required to grant a release under the exception of paragraph six. Leon argues that the release was not being sought for the purpose of the construction of an equestrian amenity since such facilities already existed when he sold the property.

As evidence of this, Leon points out that when the property was sold, an agreement of purchase and sale was signed which required PPI to complete certain amenities within a period of three years from the date of closing. The equestrian unit was not one of the amenities listed in the agreement.

However, the trial court found that when PPI purchased the property from Leon, it assured Leon that it would continue to develop Pendaries Village and construct amenities for the project, including an equestrian area offering both boarding and riding privileges to potential lot buyers and current property owners at Pendaries Village. To insure that an equestrian unit was developed, PPI constructed improvements worth $23,000. The court further found that the 19.45 acres had been used to create an amenity and should have been released from the deed of trust.

On appeal, this Court will view the evidence in a light most favorable to support the findings and conclusions of the trial court. We will not reverse unless convinced that the findings and conclusions cannot be sustained either by evidence or permissable inferences therefrom. *Lewis v. Barber's Super Markets, Inc.*, 72 N.M. 402, 384 P.2d 470, (1963). We do not weigh conflicting evidence nor determine the credibility of witnesses. *Worthey v. Sedillo Title Guaranty Inc.*, 85 N.M. 339, 512 P.2d 667 (1973).

After reviewing the transcript, we find substantial evidence to support the findings and conclusions of the trial court that Leon was required to grant a release under the provisions of the deed of trust. Neither the purchase and sale agreement nor the deed of trust limit the amenities which PPI could construct. Although the equestrian unit was not one of the amenities required to be completed by the agreement and although some facilities at the equestrian area were in existence at the time Leon originally sold the property, there is evidence to show that the expansion, construction and improvements were necessary to develop the equestrian unit into the type of amenity needed at Pendaries Village. PPI complied with the provisions of the deed of trust and was therefore entitled to a release.

Leon and PPI also claim that Lujan was not entitled to compensatory damages because he could not have taken advantage of the discount for early payment even if he had obtained the release. When Lujan demanded performance under the January 14, 1975 agreement, he submitted a conditional loan commitment letter from the First Federal Savings and Loan Association of Las Vegas, New Mexico (First Federal) for $50,000.00. Both Leon and PPI point out that when the loan commitment letter was issued, First Federal was unaware of the subdivision and use restrictions on the property. First Federal's president testified that he would not have committed the loan had he known of the restrictions. Therefore, Leon and PPI argue, the loan would ultimately not have been made, and Lujan could not have taken advantage of the discount. We find this argument to be irrelevant in light of the fact that the loan commitment was made.

The loan commitment letter conditioned the loan payment upon Lujan's satisfying the requirements of a title binder which accompanied the commitment letter. The title binder required a release of the property from the lien of the original deed of trust and required that a warranty deed be provided. The title binder does not require the warranty deed to be free of restrictions. The court found, and it is substantiated by the evidence, that a warranty deed was provided. The requirements of the loan commitment letter were met except for the release from the deed of trust. Therefore, Leon and PPI are liable for compensatory damages.

II. *Punitive Damage*

Punitive damages may be awarded only when the conduct of the wrongdoer may be said to be maliciously intentional, fraudulent or oppressive, or committed recklessly or with a wanton disregard of the rights of the plaintiff. *Loucks v. Albuquerque National Bank*, 76 N.M. 735, 418 P.2d 191 (1966).

Although we do not agree with Leon's interpretation of the interrelationship of paragraphs four and six of the deed of trust, or that adequate equestrian facilities existed at the time of sale, we hold that

Leon's conduct does not justify the award of punitive damages.

 It is uncontradicted that Leon acted on advice of counsel. The position which Leon took was not without some justification. It is clear that he believed the equestrian amenity was in existence at the time he sold the property. He was also of the belief that he was not required by the deed of trust to grant the release. Moreover, Leon showed that he was of this belief prior to the time that PPI sought a release of lien on the 19.45 acres. The other evidence cited to support the trial court's award of punitive damages is insufficient to show that Leon's actions were done "arbitrarily, willfully, and capriciously" as found by the trial court. Therefore, the award of punitive damages must be reversed.

### III. *Covenants and Restrictions*

Lujan claims that the evidence presented at trial does not support the court's conclusion that the property was conveyed subject to the conditions and covenants of record. We do not agree.

The covenants and restrictions were part of the supplement to the January 14, 1975 real estate purchase agreement. Lujan claims that he never agreed to the restrictions, as evidenced by his refusal to sign the supplement. Although Lujan's signature does not appear on the copy of the supplement presented to the court, Lujan did sign the real estate purchase agreement which stated: "See Supplement attached hereto for additional provisions." Lujan also initialed various parts of the supplement where changes were made. The memorandum of understanding which Lujan executed previously set forth substantially the same provisions contained in the supplement to which Lujan now objects. On June 9, 1976, Lujan, through his attorney, demanded that PPI perform under the January 14, 1975 agreement.

We hold that the evidence supports the finding that on January 14, 1975, Lujan and PPI executed the real estate purchase agreement, together with supplement, and that the agreement superceded all previous agreements. Therefore, the conclusion that the land should be conveyed subject to the conditions and covenants of record is affirmed.

This cause is remanded to the trial court for entry of an appropriate judgment consistent with this opinion.

IT IS SO ORDERED.

EASLEY, C. J., and PAYNE, J., concur.