679 P.2d 264

**FALCON RESEARCH & DEVELOP-MENT COMPANY, a Colorado corporation, Plaintiff-Appellant,**

v.

**James Berry CRADDOCK, d/b/a Craddock Development Company, Defendant-Appellee.**

**No. 14799.**

Supreme Court of New Mexico.

April 10, 1984.

Floyd D. Wilson, Katherine C. Pearson, Johnson & Lanphere, P.C., Albuquerque, for plaintiff-appellant.

Ross B. Perkal, Albuquerque, J. Lawrence Hamil, Hamil & Hitt, P.C., Denver, Colo., for defendant-appellee.

## OPINION

WALTERS, Justice.

Both parties appeal the trial court's determination of the meaning of the terms in a written lease agreement. Plaintiff Falcon Research and Development Company (Falcon) leased office space from defendant James Craddock (Craddock) on October 8, 1976. The lease provided for an initial five-year term with an option to renew for an additional five years. In 1981 Falcon exercised its option. A controversy then arose over the amount of rent due during the renewal term. Falcon filed a declaratory judgment action against Craddock in order to resolve the controversy. Falcon

appeals and Craddock cross-appeals the trial court's interpretation of the lease agreement. We affirm.

### 1. *Falcon's appeal*

The rental rate during the renewal term depends on the meaning of Paragraph 35 of the lease. In pertinent part, it provides as follows:

> The base rental [during the renewal term] shall be computed upon the existing base rental for the base term together with an increase that may be computed based solely upon increases in real estate taxes, insurance, utilities and building management expenses.

Findings 6 and 7 made by the trial court were:

> The provisions of paragraph 35 of the written Lease Agreement between the parties as to the rental rate for the option period are not clear or unambiguous. Defendant understood * * * [paragraph 35] to provide for an increase in rent proportional to the increase in operating cost. No evidence of Plaintiff's understanding was presented at trial. The preponderance of the evidence supports the proposition that the lease provided for an increase in rent proportional to the increase in operating costs.

The parties stipulated that the operating costs had increased by 59%. The trial court found that the base rental for the base term had been $5.04 per square foot per year, and concluded that Falcon's rent during the renewal term would be $8.01 per square foot per year.

Falcon argues that Paragraph 35 provides for a "pass-through" of the increase in operating costs; *i.e.*, that Paragraph 35 has an additive rather than a multiplier effect on the base rental. Under that approach, Falcon's rent during the renewal term would be $5.69 per square foot per year.[1]

Falcon's three contentions of error are: (1) Paragraph 35 is not ambiguous; (2) The trial court made no finding of mutual understanding of the parties on the meaning of Paragraph 35; and (3) the trial court failed to recognize, in Finding 7, Falcon's presentation of testimony regarding its understanding of Paragraph 35.

■■ Whether the lease is ambiguous is a question of law. *See Young v. Thomas*, 93 N.M. 677, 604 P.2d 370 (1979). The word "compute," one of whose synonyms is "calculate," Websters' Third New Int'l Dictionary (1966), refers to the application of mathematical processes, and is fairly susceptible of meaning any number of ways in which the computation may be accomplished. The trial court properly determined that Paragraph 35 is ambiguous. *See Vickers v. North American Land Developments, Inc.*, 94 N.M. 65, 607 P.2d 603 (1980).

Falcon misperceives the law to be applied once it is determined that an agreement is ambiguous. It argues, citing *Trujillo v. Glen Falls Insurance Co.*, 88 N.M. 279, 540 P.2d 209 (1975); *Higgins v. Cauhape*, 33 N.M. 11, 261 P. 813 (1927); and Restatement (Second) of Contracts § 20(2) (1981), that the trial court's Finding 7 is in error because it does not reflect that there was a mutual understanding of the meaning of Paragraph 35. The cases and authority cited by Falcon, however, refer either to agreements which were not ambiguous (*Higgins*) or to whether a contract was actually formed (*Trujillo;* Restatement (Second) of Contracts § 20(2) (1981)), rather than to the construction of an ambiguous agreement.

■ There is no requirement that a court find that the parties to an agreement have a *mutual* understanding of the ambiguous provisions. Once it is determined that an agreement is ambiguous, the court must ascertain the intent of the parties from such extrinsic evidence as is produced

---

1. This figure is calculated as follows: The dollar increase in operating costs was stipulated to be $20,821.00 per year. Falcon, as a tenant occupying one-third of the premises, was responsible for paying ⅓ of that amount, which, divided by 10,544 square feet, would be $.65 per square foot per year.

concerning their conversations, conduct, the surrounding circumstances at the time the agreement was executed, and the objectives sought to be accomplished by the writing. *Shaeffer v. Kelton,* 95 N.M. 182, 619 P.2d 1226 (1980). The trial court's construction of the meaning of terms of an agreement is one of fact, *id.,* and its determination will not be disturbed if it is supported by substantial evidence. *Montoya v. Travelers Insurance Co.,* 91 N.M. 667, 579 P.2d 793 (1978). There was ample evidence upon which the trial court could have based its finding that the parties intended the increase in rent during the renewal term to be proportional to the increase in operating costs. Although there was testimony at trial that Falcon understood the Paragraph 35 provision as establishing a "dollar-for-dollar pass-through of the operating costs," the rule of construction is that the intent of the parties is to be determined as of the time when the lease was executed. *Shaeffer v. Kelton; Keeth Gas Co., Inc. v. Jackson Creek Cattle Co.,* 91 N.M. 87, 570 P.2d 918 (1977). On appeal, we view the evidence in the light most favorable to the trial court's findings. *Lujan v. Pendaries Properties, Inc.,* 96 N.M. 771, 635 P.2d 580 (1981). There is substantial evidence to support the trial court's apparent belief that the testimony regarding Falcon's interpretation of the paragraph in dispute was an *"ex post facto"* understanding of the parties' intent.

Because we uphold the trial court on its resolution of the parties' intent and the meaning of Paragraph 35, we affirm its decision that the base rent during the renewal period should reflect a 59% increase over the base rent paid during the base term.

#### 2. *Craddock's appeal*

Craddock attacks the trial court's finding that the base rent during the initial five-year term was $5.04 per square foot per year. The court arrived at this figure by dividing the total amount to be paid under the lease for the five-year term, $265,708.80, first by five years, then by 10,544, the number of square feet of office space leased. In the initial five-year period, the monthly rental rate was stated to be $4,920.53, but it was provided that the first three months' and last three months' rent were free. Craddock argues that, in the renewal term, there should be no months of free rental, in which case the base rent would be 60 months times $4,920.53, or $295,231.80. That would translate to a rate of $5.60 per square foot per year. The 59% increase of operating costs would then result in a base rent during the renewal term of $8.90 per square foot per year.

With respect to a determination of the base rent during the initial five-year term, the lease is unambiguous. It clearly provides for *total* payment of $265,708.80. That is equivalent to a base rental of $5.04 per square foot per year. Paragraph 35 clearly provides that the base rental for the renewal term is to be computed upon the base rental for the base term together with the increase attributable to increased operating costs. The trial court did not err in its calculations that the rent during the initial five-year period was $5.04 per square foot per year, and that the rent during the renewal term, reflecting a 59% increase in operating cost, should be $8.01 per square foot per year.

The judgment of the trial court is affirmed. IT IS SO ORDERED.

SOSA, Senior Justice, and STOWERS, J., concur.